NICHOLSON v CHILDREN'S HOSPITAL OF MICHIGAN

Docket No. 67548. Submitted January 12, 1984, at Detroit.—Decided July 24, 1984. Leave to appeal denied, 421 Mich —.

Three-month-old Julius Nicholson received intravenous (IV) antibiotic therapy for meningitis at Children's Hospital of Michigan. Nurses' notes in the hospital records showed that fluids from the IV had flowed outside the vein into surrounding subcutaneous tissue. The IV was discontinued and warm compresses were applied to the affected area. The foot was swollen but no blister was noticed. Approximately 11 hours later, a blister was noticed and drained by a doctor. Julius Nicholson was discharged from the hospital a week later, but was readmitted because of infection at the site of the IV approximately two weeks after being discharged. Further treatment, including a skin graft, became necessary and Julius was left with a permanently scarred foot. Julius Nicholson, by his next friend, Rosie Nicholson, brought a medical malpractice action against Children's Hospital of Michigan in Wayne Circuit Court. The jury returned a verdict in favor of plaintiff in the amount of $50,000. Defendant moved for a judgment notwithstanding the verdict. The motion was granted, Victor J. Baum, J. Plaintiff appeals. *Held:*

The evidence presented, even when viewed in the light most favorable to plaintiff, was insufficient to support a reasonable inference that defendant's departure from the applicable standard of care by failing to monitor plaintiff's condition more closely caused or aggravated plaintiff's injuries. The trial court did not err in granting defendant's motion for judgment notwithstanding the verdict.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur 2d, Judgments § 127.
Practice and procedure with respect to motions for judgment notwithstanding or in default of verdict under Federal Civil Procedure Rule 50(b) or like state provisions. 69 ALR2d 449.
[2] 73 Am Jur 2d, Summary Judgment §§ 1, 4, 6.
Propriety of granting summary judgment in case involving gross or wanton negligence. 50 ALR2d 1309.
[3] 29 Am Jur 2d, Evidence § 165.
57 Am Jur 2d, Negligence § 142.

1. Motions and Orders — Judgment Notwithstanding the Verdict — Evidence.

A defendant's motion for judgment notwithstanding the verdict should be granted only if, viewing the evidence in the light most favorable to the plaintiff and giving plaintiff the benefit of any reasonable inference that can be drawn, the evidence is insufficient as a matter of law to support a judgment for plaintiff.

2. Negligence — Causation — Summary Judgment — Jury Question.

The determination of causation is the most susceptible to summary determination in a tort action; however, any doubts about the connections between causes and effects should be resolved by a jury.

3. Negligence — Causation — Evidence.

A finding of causation must not be based on mere conjecture, but rather must be based on reasonable inferences from the evidence.

*Rifkin & Kingsley, P.C.* (by *James M. Rifkin),* for plaintiff.

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C.* (by *Ronald E. Wagner* and *Richard S. Baron),* for defendant.

Before: Wahls, P.J., and R. M. Maher and C. W. Simon,* JJ.

Per Curiam. In this medical malpractice action, a verdict in the amount of $50,000 was returned for plaintiff after a jury trial. The trial court granted defendant's motion for judgment notwithstanding the verdict, and plaintiff appeals as of right.

A defendant's motion for judgment notwithstanding the verdict should be granted only if, viewing the evidence in the light most favorable to the plaintiff and giving plaintiff the benefit of any

* Circuit judge, sitting on the Court of Appeals by assignment.

reasonable inference that can be drawn, the evidence is insufficient as a matter of law to support a judgment for plaintiff. See, for example, *Drummey v Henry,* 115 Mich App 107, 110-111; 320 NW2d 309 (1982).

In *Davis v Thornton,* 384 Mich 138, 145; 180 NW2d 11 (1970), the Court explained the essential elements of a negligence action as follows:

"[D]etermination of negligence alone does not end the inquiry. Once a jury or judge has found that the defendant was negligent and that the plaintiff suffered injuries, it must be determined, whether the plaintiff's injuries were *caused* by the defendant's wrongful conduct and, then, if the defendant did *cause* the injuries, judge whether the plaintiff's injuries were too insignificantly related to or too remotely effected by the defendant's negligence.

"Of all the elements necessary to support recovery in a tort action, causation is the most susceptible to summary determination for it usually amounts to a logical connection of cause to effect. However, any doubts about the connections between the causes and the effects, should be resolved by the jury." (Emphasis in original.)

Viewed in the light most favorable to plaintiff, the evidence here showed that three-month-old Julius Nicholson received intravenous (IV) antibiotic therapy for meningitis. Nurses' notes from hospital records showed that on August 14, 1978, at 3:30 p.m., fluids from an IV in plaintiff's left foot had flowed outside the vein into surrounding subcutaneous tissue. Such a condition is referred to as the IV having gone subcutaneous, or "sub-Q". The IV was discontinued, and warm compresses were applied. Plaintiff's foot was observed to be swollen, but no blister was present.

No further reference to the condition of the site of IV appears in the nurses' notes until 2:45 a.m.

on August 15, when a blister was observed to have developed at the site of the IV. A doctor was called, and the blister was aspirated and drained. Expert testimony showed that such blisters are often associated with IV's that have gone "sub-Q" and that such blisters may take as long as 8 to 12 hours to form.

Plaintiff was discharged from defendant hospital on August 21. On September 6, plaintiff was readmitted to a hospital with an infection at the site of the IV. Some evidence indicated that plaintiff's mother had failed to regularly soak the foot, apply medication, or change the dressing. Further treatment, including a skin graft, became necessary, and plaintiff was eventually left with a permanently scarred foot.

The expert witnesses agreed that IV's can go "sub-Q" without any negligence on the part of those caring for the patient. No evidence of any negligence in this regard was introduced here. However, plaintiff's expert pointed to the gap in the nurses' notes concerning the condition of the IV site between 3:30 p.m. on August 14 and 2:45 a.m. on August 15. The expert emphasized the necessity of monitoring such a condition closely to keep track of the progress of therapy and to enable intervention to prevent further damage if the condition began to deteriorate. The absence of a record of such monitoring supports an inference that such monitoring did not take place. See MRE 803(7). Plaintiff's expert concluded that the gap in the notes demonstrated a departure from the applicable standard of care.

However, the evidence was insufficient to show a causal connection between this departure from the standard of care and the deterioration of plaintiff's condition. There was no evidence that anything could have been done during the relevant time

period to prevent formation of the blister. Given the testimony as to the length of time it may take for such blisters to form, there was no basis for an inference that the blister went untreated for a significant period of time. There was no evidence indicating that plaintiff's condition deteriorated during the relevant time period in any other way which prompt treatment could have prevented. Finally, and most significantly, no evidence suggested any connection between any possible deterioration of plaintiff's condition during the relevant time period and plaintiff's development of the infection weeks later.

A finding of causation must not be based on mere conjecture, but rather must be based on reasonable inferences from the evidence. *Buckeye Union Fire Ins Co v Detroit Edison Co,* 38 Mich App 325, 331-332; 196 NW2d 316 (1972). Because the evidence presented here, even when viewed in the light most favorable to plaintiff, was insufficient to support a reasonable inference that defendant's departure from the standard of care caused or aggravated plaintiff's injuries, the trial court did not err by granting defendant's motion for judgment notwithstanding the verdict.

Affirmed.